IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOSE HENAO, | ) | CIV. NO. 10-00772 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANT'S |
| vs. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | (ECF NO. 87) |
| WYNDHAM VACATIONS RESORTS, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 87)**

**I.        INTRODUCTION.**

Plaintiff Jose Henao sues Defendant Wyndham Vacation Resorts, Inc., asserting employment discrimination.  Wyndham moves for summary judgment on all claims asserted in the Third Amended Complaint.

At the hearing on the motion for summary judgment, Henao dismissed the following claims with prejudice: the "color" discrimination claims asserted in Counts II and VI; the <u>Kinoshita</u> claim (employee handbook contract claim) asserted in Count IX; the tort claims asserted in Counts X to XII; and the punitive damage claim asserted in Count XIII.  Henao also agreed that he is not seeking reinstatement and that his "damages cutoff" is July 19, 2012, at the latest.  Finally, Henao stated at the hearing that he was suing only over his demotion.  Accordingly, to the extent the Third Amended Complaint could be read as

asserting claims based on his termination, <u>see, e.g.</u>, Third Amended Complaint ¶ 66, those claims are waived.

The remaining claims before the court on the present motion are state and federal age discrimination claims (Counts I and V), national origin/ancestry discrimination claims (Counts III and VII), and retaliation claims (Counts IV and VIII).  The court grants Wyndham's motion for summary judgment on these claims in part and denies the motion in part.

To the extent Henao asserts that he was demoted because of his national origin and age and that he suffered a hostile work environment based on comments made about his national origin and age, summary judgment is denied.  Summary judgment is granted in favor of Wyndham with respect to the retaliation claims asserted in Counts IV and VIII.

**II.      SUMMARY JUDGMENT STANDARD.**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  <u>See</u> <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that

3

there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)); see also Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

4

Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  <u>Id.</u>  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  <u>Id.</u>

III.        **FACTUAL BACKGROUND.**

Henao is a 65-year-old man from Colombia.  <u>See</u> Declaration of Jose Henao ¶ 3, Jan. 2, 2013, ECF No. 111-8.  He speaks with a thick Spanish accent.  <u>See id.</u> ¶ 31 ("I have a thick Spanish accent"); Declaration of Michael Turolla ¶ 5, ECF No. 88-2.

Wyndham is a for-profit, timeshare company.  <u>See</u> Declaration of Jonathan O'Neill ¶ 3, Oct. 16, 2012, ECF No. 88-1.

On or about February 5, 2005, Henao applied to be a sales agent at Wyndham.  <u>See</u> Employment Application, ECF No. 88-16.  Henao admits to having lied on his job application in several ways.  The application says that he went to high school in Los Angeles and attended "U.C.L.A." and that his "Major Subject/Course" was "B.A."  <u>Id.</u>  However, Henao admits in his deposition that he went to high school in Columbia and never enrolled at U.C.L.A.  <u>See</u> Videotaped Deposition of Jose Guillermo Henao at 161-62, July 17, 2012, ECF No. 88-13.  Henao also admits

5

to having lied on the application when he said that he spoke Portuguese.  Id.  In addition, Henao lied on his application when he said that he had worked for Villa Del Palmar in Puerto Vallarta as a sales manager from February 1994 through August 2000.  Id. at 159-60.  Henao explained that he thought misrepresenting his experience as a sales manager would help him get hired by Wyndham.  Id. at 160.

At the end of the employment application, Henoa signed his name after the following certification:

> I certify that the answers given to the questions and the statements made (including statements on the attached resume, and inserted forms if any) on this application and in the hiring process are true and correct to the best of my knowledge.  I understand that a false answer, an omission or a misleading statement may result in a decision not to hire me, the withdrawal of any offer of employment, or the termination of my employment with the Company regardless of when such false, misleading, or erroneous information is discovered.

Id.

On February 28, 2005, Henoa was hired as a Sales Agent/Associate.  See Henao Decl. ¶ 4.  His job was to sell timeshares.

In 2007, Charles Barker was hired as the Site Vice President.  Thereafter, Barker was Henao's supervisor.[1]  Id. ¶ 9.

---

[1]Barker was named as a Defendant in the original Complaint but was dropped from the case when Henao filed his Third Amended Complaint.  ECF No. 68.

On March 22, 2008, Henoa was promoted to the position of Focus Team Manager.  Id. ¶ 8.

Henao says that, beginning in September 2008, he "was unrelentlessly harassed" by Barker.  Id. ¶ 13.  Henao testified in his deposition that Barker said things indicating that Barker thought Henao was from Mexico.  See Henao Depo. at 111, ECF No. 88-13.  For example, Barker called Henao "Pancho Villa" several times, or "amigo."  Id.  Henao said it was "humiliating" to be addressed as "amigo" when he "has a name."  Id. at 112-13.  Henao says that he asked Barker to use his name, rather than "amigo," but Barker continued to call him "amigo."  Id. at 113-14.  Henao says that Barker referred to him as a "dumb Mexican" a couple of times when Barker was upset with him.  Id. at 116, 120.  Asked whether Barker used any other racial slur, Henao responded, "That's pretty much it."  Id. at 117.  Henao testified that he did not complain about the names to Wyndham's human resource department or its anonymous hotline.  Id. at 123, 127.  According to Henao, the alleged harassment stopped only when Barker left the company in 2009.  Id. at 128.

In his subsequent declaration, Henao says there were indeed additional national origin slurs.  He says, "Barker would call me a 'wetback' on many occasions."  Henao Decl. ¶ 33, ECF No. 111-8.  Although Wyndham claims that the "wetback" comment was only recently raised and contradicts his deposition

testimony, references to "wetback" were included in his Complaints.  See Complaint ¶ 12, ECF No. 1 ("Defendant Barker routinely referred to Plaintiff as 'wetback'"); Third Amended Complaint ¶ 20, ECF No. 68 ("BARKER would make comments and call Plaintiff HENAO such names as . . . 'wetback'").  Henoa claims that Barker told him, "I don't know why you wetbacks behave the same."  Id. ¶ 38.  It does not appear that Henao was specifically asked in his deposition about any of the "wetback" allegations. Under the circumstances, the court considers Henao's "wetback" assertions.  Henao also claims that Barker told him, "You Mexicans never learn."  Henao Decl. ¶ 35.

Henao testified that, for Columbians, it is offensive to be mistaken for Mexicans.  Henao Depo. at 28, ECF No. 88-13.

Anne Glushenko, employed by Wyndham "[b]eginning in 2008 through 2009" as a Senior Administrative Manager, says she heard Barker call Henao "amigo" and "Pancho Villa," and also heard Barker say, "We need to get rid of the old and bring in the new."  See Declaration of Anne Glushenko ¶¶ 2, 3, 6, and 9.

Ofer Ahuvia, another Wyndham employee, similarly says he heard Barker call Henao "amigo" and "Pancho Villa." Declaration of Ofer Ahuvia ¶ 6, ECF No. 111-7.  However, according to a Charge of Discrimination filed with the Equal Employment Opportunity Commission, Ahuvia was terminated on

February 21, 2008, well before September 2008, when Henao claims

Barker's discrimination against him began.  See ECF No. 117-4.

Henao says that Barker also made comments about age,

such as "You old people don't learn."  Henao Depo. at 134; Henao

Decl. ¶ 20.  Henao testified that Barker wanted to "get rid of us

because we were no use in the office; that we were not performing

up to his satisfaction."  Henao Depo. at 135.  He explained that,

in using the word "us," Barker appeared to be referring to the

"old managers," Henao and John Parris.  Id.

In his declaration, Henao also claims that Barker said:

"Here they are, all the old bags"; "I'm going to get rid of all

you old clunkers"; "I am going to replace you with younger and

more efficient managers"; and "One way or another I'm going to

get you demoted."  Henao Decl. ¶¶ 16-19.

John Parris, another frontline sales manager for

Wyndham, says that Barker told him that he and Henao were lucky

to have their jobs at their ages because Andrea Ward, the

Regional Director of Human Resources, wanted to fire both of

them.  See Declaration of John Parris ¶ 6, ECF No. 111-5.

Art Brown, a Quality Control Agent at Wyndham, says he

heard Barker call Henao "amigo," "Pancho Villa," a "slippery

Mexican," and a "wetback."  Declaration of Art Brown ¶¶ 5, 8-11.

He says he heard Barker refer to Henao as a "fossil" and

"medieval," and say, "We need to get rid of all these old

9

clunkers." Id. ¶¶ 13-15.  However, Sanford Nojima, the Director

of Human Resources for Wyndham, says that, according to Wyndham's

business records, Art Brown took a leave of absence from Wyndham

beginning in mid-June 2008 and that Brown moved to Arizona in the

fall of 2008, see Declaration of Sanford Nojima ¶ 5, ECF No. 117-

3, about the time Henao claims that Barker's discrimination

against him began.

Henao says he was demoted on March 28, 2009.  See Henao

Decl. ¶ 15.  Wyndham says this demotion was not discriminatory,

but instead based on performance.  Michael Turolla, Senior Vice-

President for Sales and Marketing, says that, in September of

2008, the Hawaii managers (Turolla, Barker and Mark Pollard)

became increasingly concerned about underperformance.  See

Declaration of Michael Turolla ¶ 8, ECF No. 88-2.  They therefore

allegedly "closely watched the sales performance of sales

managers in Waikiki, including the front-line managers."  Id.

¶ 8.

On or about September 29, 2008, Turolla sent an email

to Barker and Pollard.  Turolla attached a table that appeared to

indicate that sales numbers for Henao and Parris were down.

Turolla asked, "Charlie/Mark what is the plan for Jose, and

John?"  See ECF No. 88-6.  Pollard replied, "This is pitiful."

Id.  Barker replied, "Luv lots of luv the good news is we can

only go up from here."  Id.

On October 2, 2008, Pollard sent Barker an email telling Barker to place Henao and Parris on "SP," or specific performance.  Id.  Specific performance appears to be a probationary period in which an employee is supposed to increase his or her sales numbers.  See, e.g., ECF No. 88-9.  Barker placed Henao and Parris on specific performance the day the email was sent.  See ECF No. 88-6.  It appears that the completion of that specific performance did not end the issue.  Barker placed Henao on specific performance again on January 8, 2009, and again on February 22, 2009.  See ECF No. 88-7; Henao Depo. at 375, ECF No. 88-14.

Henao says that he was placed on specific performance based on reports that indicated that his "APG" was in the 600s, when in fact it was in the 1500s.  Id. at 377-78.  Henao suggests that his "APG" was misstated or manipulated.  Id. at 378.

The "APG," or "Average Volume Per Guest" measures an agent's net sales revenue divided by the number of sales presentations, or "tours," the agent was assigned in a given period.  It thus reflects the agent's success in selling timeshare interests.  The higher the APG, the greater Wyndham's profit.  An APG below a certain level could lead to specific performance prior to termination or reassignment.  Declaration of Jonathan O'Neill ¶¶ 6-10, ECF No. 88-1.

Anne Glushenko says that Barker told her to manipulate the numbers for some of the sales representatives.  She says that she was "not normally" asked to manipulate younger sales representatives' APGs.  See Declaration of Anne Glushenko ¶¶ 3-5, ECF No. 111-4.  Henao says that Barker told him that he was being demoted because of poor performance.  See Henao Depo. at 185, ECF No. 88-13.

On July 17, 2012, Jonathan O'Neill, the Director of Front Line Sales for Wyndham, attended the deposition taken of Henao in the present case.  O'Neill heard Henao admit to having lied on his job application.  See Declaration of Jonathan O'Neill ¶¶ 2, 24, ECF No. 88-1.  O'Neill says that Wyndham has a company policy stating that falsification of records is grounds for termination.  Id. ¶ 5 Employee Policy Handbook at 14, ECF No. 88-11 (stating that the company "aspires to follow a progressive discipline process," but reserves the right to skip that process and impose "whatever discipline, including termination," for a number of matters, including falsification of employment applications).  Two days later, on July 19, 2012, Henao was fired.  See O'Neill Decl. ¶ 24.  Henao does not dispute that it was O'Neill who made the decision to terminate him.  See Opposition at 35-36 ("The actions of Jonathan O'Neil[l] would have dissuaded any reasonable person from making or supporting a charge of discrimination. . . . Whether or not Mr. Oneil[l]'s

actions were adverse under the law is a question of fact."). Henao also conceded at the hearing on the present motion that there is no evidence in the record from which any discriminatory animus on O'Neill's part may be inferred.  At most, Henao complains that O'Neill had taken away his workstation after he was demoted in 2009.  See Henao Decl. ¶ 42, ECF No. 111-8.

In a Pre-Complaint Questionnaire submitted to the Hawaii Civil Right Commission on March 30, 2009, Henao declared under penalty of perjury that he was Hawaiian-Puerto Rican.  See ECF No. 88-15, PageID # 926.  Henao admitted in his deposition that he had lied in that questionnaire and is neither Hawaiian nor Puerto Rican.  See Henao Depo. at 172, ECF No. 88-13.

IV.        ANALYSIS.

Counts I and V of the Third Amended Complaint allege age discrimination in violation of the Age Discrimination in Employment Act and section 378-2 of Hawaii Revised Statutes. Counts III and VII allege national origin/ancestry discrimination in violation of Title VII and section 378-2.  Counts IV and VIII allege retaliation in violation of Title VII and section 378-2(2).[2]  Wyndham moves for summary judgment on these claims.

---

[2]Henao is not asserting discrimination based on race.  See Henao Depo. at 212, ECF No. 88-13.

**A.   Disparate Treatment Claims.**

Title VII of the Civil Rights Act of 1964 forbids
employment discrimination based on "race, color, religion, sex,
or national origin."  42 U.S.C. § 2000e-2(a).  The Age
Discrimination in Employment Act, 29 U.S.C. § 623, prohibits
discrimination based on age.  Hawaii law similarly prohibits
discrimination based on "race, sex, including gender identity or
expression, sexual orientation, age, religion, color, ancestry,
disability, marital status, arrest and court record, or domestic
or sexual violence victim status."  Haw. Rev. Stat. § 378-2.

A plaintiff may prove disparate treatment in two ways.
First, the plaintiff may apply the burden-shifting analysis set
forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).
See Shelley v. Green, 666 F.3d 599, 607-08 (9th Cir. 2012)
(noting that the McDonnell Douglas burden shifting framework
applies when evaluating ADEA claims on a summary judgment
motion); Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103
(9th Cir. 2008) (applying McDonnell Douglas burden shifting
framework to Title VII case); Shoppe v. Gucci Am., Inc., 94 Haw.
368, 378, 14 P.3d 1049, 1059 (D. Haw. 2000) (applying federal
standard to claims under section 378-2).

Under the McDonnell Douglas framework, a plaintiff must
establish a prima facie case of discrimination by showing that
(1) he belongs to a protected class; (2) he performed according

14

to his employer's expectations; (3) he suffered an adverse
employment action; and (4) similarly situated individuals outside
of his protected class were treated more favorably.  See
Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116 (9th Cir.
2009); Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d
1115 (9th Cir. 2000).  The degree of proof required to establish
a prima facie case for summary judgment is minimal.  See Coghlan
v. Am. Seafoods Co., 413 F.3d 1090, 1094 (9th Cir. 2005).  Under
the McDonnell Douglas framework, once a plaintiff succeeds in
presenting a prima facie case, the burden then shifts to the
defendant to articulate a "legitimate, nondiscriminatory reason"
for its employment decision.  Noyes v. Kelly Servs., 488 F.3d
1163, 1168 (9th Cir. 2007).  "Should the defendant carry its
burden, the burden then shifts back to the plaintiff to raise a
triable issue of fact that the defendant's proffered reason was a
pretext for unlawful discrimination."  Id.

        Second, a plaintiff may prove disparate treatment by
producing direct or circumstantial evidence demonstrating that a
discriminatory reason more likely than not motivated the
employer.  See Surrell, 518 F.3d at 1105.  In Cordova v. State
Farm Insurance Companies, 124 F.3d 1145, 1149 (9th Cir. 1997),
the Ninth Circuit stated that evidence of derogatory comments
such as "dumb Mexican" "can create an inference of discriminatory
motive."  When a comment is not a "stray remark," even if the

15

employer has a legitimate, nondiscriminatory reason for taking an adverse employment action, the plaintiff "will <u>necessarily</u> have raised a genuine issue of material fact with respect to the legitimacy of bona fides of the employer's articulated reason for its employment decision."  <u>Id.</u> (quotation marks and citation omitted).

Henao has raised a genuine issue of fact as to whether his March 2009 demotion was the result of national origin/ancestry or age discrimination.  Henao says that Barker told him he was being demoted because his numbers were low, but that the numbers attributed to him had been manipulated by Barker.  Additionally, it appears that Barker thought Henao was Mexican.  His alleged statements calling Henao a "dumb Mexican" and a "wetback" are sufficient to create an inference of animus on Barker's part toward people he perceived as Mexicans that may have played a role in Henao's demotion.[3]  See <u>Cordova</u>, 124 F.3d 1149.

Neither the Ninth Circuit nor the Hawaii appellate courts have expressly ruled on whether a plaintiff may assert a "perceived as" claim under Title VII or chapter 378 of Hawaii

---

[3]Calling Henao "amigo" or "Pancho Villa" is not necessarily the same as calling him "dumb Mexican" and a "wetback." Arguably, "amigo" and "Pancho Villa" lack the derogatory nature of the latter terms.  In any event, the comments all indicate that Barker was focused on Henao's perceived relation to Mexico.

Revised Statutes.  This court reads Title VII and chapter 378 as permitting such claims.

That is, even though Henao was not actually from Mexico, he may maintain a "perceived as" national origin claim if he was discriminated against based on characteristics that led others to connect him to Mexico, such as his accent.  See EEOC v. WC&M Enters., Inc., 496 F.3d 393, 401 (5th Cir. 2007) (noting that a plaintiff may establish national origin discrimination without identifying the victim's actual country of origin, and stating that, according to the EEOC's guidelines, it "'is enough to show that the complainant was treated differently because of his or her foreign accent, appearance, or physical characteristics.'" (quoting Guidelines on Discrimination Because of National Origin, 45 Fed.Reg. 85,632, 85,633 (Dec. 29, 1980)); LaRocca v. Precision Motorcars, Inc., 45 F. Supp. 2d 762, 770 (D. Neb. 1999) ("The fact that Ms. Friend ignorantly used the wrong derogatory ethnic remark toward the plaintiff is inconsequential. It is enough that the plaintiff's Italian characteristics were the foundation of Ms. Friend's harassment.").

The anti-discrimination statutes at issue in this case were enacted to prohibit certain kinds of discrimination.  An employer cannot escape liability for prohibited discrimination simply because the discrimination flows from the employer's mistake about the precise nature of a person's characteristics.

To hold otherwise would allow prohibited discrimination to go unredressed on the basis of an error in no way diminishing the harm to the victim of the discrimination.  Thus, had Wyndham discriminated against Henao thinking he was from Puerto Rico, which he had told Wyndham he was from, it would make little sense to excuse Wyndham because Henao was actually from Columbia and had pretended to be from Puerto Rico thinking that would avoid any negative reaction to people from Columbia.

In this regard, the court is unpersuaded by Wyndham's reliance on Hernandez v. Forest Preserve District of Cook County, Ill., 2011 WL 4398136 (N.D. Ill. Sept. 21, 2011).  The Plaintiff in Hernandez, who was Puerto Rican, complained that a supervisor said he looked like a "Pollack" and was Puerto Rican.  The Hernandez decision did not actually say that Title VII did not permit a "perceived as" claim.  Instead, the decision said, "But Thompson's alleged comment that Hernandez looks like a Pollack . . . is not evidence of national origin discrimination toward someone of Puerto Rican national origin.  And simply calling someone of Puerto Rican descent a 'Puerto Rican' is not a racial epithet."[4]  Id. at *6.

The court recognizes that Congress did not expressly address "perceived as" national origin discrimination in

_____

[4]This discussion occurred in connection with a hostile work environment claim.  The Hernandez court noted that, in any event, the claim failed because it was based on stray remarks.

18

Title VII, in contrast to the express recognition by Congress of

claims under the Americans with Disabilities Act by persons

"perceived as" disabled."  See, e.g., Burrage v. FedEx Freight,

Inc., 2012 WL 1068794, *5 (N.D. Ohio Mar. 29, 2012); Butler v.

Potter, 345 F. Supp. 2d 844 (E.D. Tenn. 2004).  But reading

Title VII and section 378-2 as encompassing "perceived as"

discrimination is entirely consistent with what Congress and

Hawaii's legislature were attempting to prohibit.  This court

agrees with, for example, the Fifth Circuit in this regard.  See

WC&M Enters., 496 F.3d at 401.

    With respect to Henao's age discrimination claims,

Barker's alleged references to "old bags" and "old clunkers,"

combined with statements that "you old people don't learn," that

"I am going to replace you with younger and more efficient

managers," and that "one way or another I'm going to get you

demoted," raise an issue of fact as to whether Barker had an

animus toward older individuals that may have played a role in

his decision to demote Henao.

    Summary judgment is therefore denied with respect to

Henao's claims that he was demoted based on national origin and

age.[5]

---

[5]At Henao's deposition, Henao's attorney stated that Henao
was not asserting discrimination based on race.  See Henao Depo.
at 212, ECF No. 88-13.  To the extent Henao's Opposition claims
that Henao was discriminated against for being Hispanic, he
appears to be switching course and trying to assert a race-based
claim.  See City of Richmond v. J.A. Croson, Co., 488 U.S. 469,

B.   **Retaliation Claims.**

Title VII's anti-retaliation provision forbids

"discriminat[ion] against" an employee who has opposed any

unlawful employment practice or who has made a charge, testified,

assisted, or participated in a Title VII proceeding or

investigation.   42 U.S.C. § 2000e-3(a).   In relevant part,

Hawaii's anti-retaliation provision similarly provides that

employers may not "discriminate against any individual because

the individual has opposed any practice forbidden by this part or

has filed a complaint, testified, or assisted in any proceeding

respecting the discriminatory practices prohibited under this

part."   Haw. Rev. Stat. § 378-2(2).

To make out a prima facie retaliation claim under Title

VII, a plaintiff must show that "(1) the employee engaged in a

protected activity, (2) she suffered an adverse employment

action, and (3) there was a causal link between the protected

activity and the adverse employment action."   <u>Davis v. Team Elec.</u>

<u>Co.</u>, 520 F.3d 1080, 1093-94 (9th Cir. 2008).   A retaliation claim

under section 378-2(2) has similar elements: (1) the plaintiff

must have opposed any practice forbidden by chapter 378,

Employment Practices, Part I, or filed a complaint, testified, or

_____

508 (1989) (stating that a preference given to Hispanics is a
preference solely based on race).   In light of Henao's waiver of
any race-based discrimination claim at his deposition, he may not
now assert a claim based on racial discrimination.

assisted in any proceeding respecting the discriminatory practices, (2) his or her employer must have discharged, expelled, or otherwise discriminated against the plaintiff, and (c) there must be a causal link between the protected activity and the adverse action.  Schefke v. Reliable Collection Agency, 96 Haw. 408, 426, 32 P.3d 52, 70 (2001).

Henao's retaliation claims make little sense.  His Opposition to the present motion does not identify the adverse employment action he suffered in retaliation for his exercise of rights.  See Opposition at 35-36, ECF No. 110.  Given his statement at the hearing on this motion that he is suing only over his demotion, it appears that he is relying on that demotion as the adverse employment action he allegedly suffered for purposes of his retaliation claims.[6]  However, according to paragraph 15 of the original Complaint, he was demoted on March 28, 2009, well before the original Complaint was filed in December of 2010.  There is therefore no causal link between the supposed adverse employment action and Henao's exercise of rights.

---

[6]Not only did Henao state at the hearing that he is not basing any claim on his termination, his termination could not have relevance to his retaliation claim because he was terminated after he filed his Third Amended Complaint.

### C.    **Hostile Work Environment Claims.**

To prevail on a hostile work environment claim under Title VII, Henao must show that his "workplace was permeated with discriminatory intimidation . . . that was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000)(internal quotation marks and citations omitted).  The court examines the totality of the circumstances to determine whether a claimant shows that the work environment was both subjectively and objectively abusive.  Id. "When assessing the objective portion of a plaintiff's claim, we assume the perspective of the reasonable victim."  Id. at 924. When determining whether an environment was sufficiently hostile or abusive, courts examine all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance. Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). Title VII is not a "general civility code."  Id. at 788. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  Id. (internal citation omitted).

The Hawaii Supreme Court analyzes similar factors in considering hostile work environment claims brought under chapter 378.  See Nelson v. Univ. of Hawaii, 97 Haw. 376, 390, 38 P.3d 95, 109 (2001).  Under Hawaii law, the "analysis of whether particular harassing conduct was severe and pervasive is separate and distinct from the remaining requirements of a plaintiff's claim: it is the harasser's conduct which must be severe or pervasive, not its effect on the plaintiff or the work environment."  Aquero v. Hilton Hawaiian Vill. LLC, 104 Haw. 423,431, 91 P.3d 505, 513 (2004) (internal alterations omitted).  Wyndham argues that the allegedly harassing comments were not severe and pervasive enough to alter the terms and conditions of Henao's employment.

In Vasquez v. County of Los Angeles, 349 F.3d 634, 643-44 (9th Cir. 2004), the Ninth Circuit determined that there had not been a hostile work environment created when the employee was told, in statements more than six months apart, that he had "a typical Hispanic macho attitude" and that he should consider transferring to the field.  Similarly, in Manatt v. Bank of America, N.A., 339 F.3d 792, 798-99 (9th Cir. 2003), the Ninth Circuit concluded that a hostile work environment was not created when jokes were overheard using the phrase "China man," a reference was made to China and communism, and co-workers "on only a couple of occasions" directed racially insensitive "humor"

23

at the plaintiff, including ridiculing the plaintiff's pronunciation of "Lima" and pulling their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians.

In contrast, the Ninth Circuit found a hostile work environment when an employee "endured an unrelenting barrage of verbal abuse," including having other employees habitually call him sexually derogatory names, refer to him as female, and taunt him for behaving like a woman.  See Nichols v. Azteca Restaurant Enters., Inc., 256 F.3d 864, 872 (9th Cir. 2001).  The Ninth Circuit has explained that "claims that raise a genuine issue of material fact as to the existence of a hostile environment involve allegations of continuing violations."  In Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1108 (9th Cir. 1998), the Ninth Circuit stated:

> Here, Draper has testified that she was
> subject to the same sort of harassment by
> Anelli on a regular basis, and that she
> constantly felt uncomfortable and upset at
> work.  As in most claims of hostile work
> environment harassment, the discriminatory
> acts were not always of a nature that could
> be identified individually as significant
> events; instead, the day-to-day harassment
> was primarily significant, both as a legal
> and as a practical matter, in its cumulative
> effect.  Because Draper's hostile work
> environment claim is not based upon a series
> of discrete and unrelated discriminatory
> actions, but is instead premised upon a
> series of closely related similar occurrences
> that took place within the same general time
> period and stemmed from the same source, her

allegations set forth a claim of a continuing violation.

Id.

Henao says Barker called him "Pancho Villa" several times, see Henao Depo. at 111, "dumb Mexican" a couple of times, id. at 116, and a "'wetback' on many occasions," see Henao Decl. ¶ 33, and "often" referred to him as "amigo," id. ¶ 36.  This is sufficient to create a genuine issue of fact as to the severity and pervasiveness of the comments.

The record does not show the same pervasiveness of comments pertaining to age.  However, Henao does say that Barker referred to him and other older workers as "old bags" and "old clunkers," and "[m]any times" told him "you old people don't learn."  Without indicating frequency, Henao also says that Barker commented that "I am going to replace you with younger and more efficient managers," and that "one way or another I'm going to get you demoted."  See Henao Decl. ¶¶ 16-20.  Viewed as a whole, the evidence is sufficient to create a question of fact as to whether a hostile work environment was created based on age.

The court rejects Wyndham's argument on this motion that the alleged derogatory statements were "stray remarks" insufficient to support a hostile work environment claim.  See Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir. 1990) ("'stray' remarks are insufficient to establish discrimination").  Henao's statements that certain derogatory

25

remarks were made "many times" are sufficient to raise a question of fact regarding the pervasiveness of the comments.  The actual severity and pervasiveness of the comments are determinations to be made at trial.

In summary, Henao's hostile work environment claims based on national origin and age may proceed.

**V.        CONCLUSION.**

The court notes that Henao dismissed with prejudice the "color" discrimination claims asserted in Counts II and VI, the Kinoshita claim (employee handbook contract claim) asserted in Count IX, the tort claims asserted in Counts X to XII, and the punitive damage claim asserted in Count XIII.  Henao also agreed that he is not seeking reinstatement and that his "damages cutoff" is July 19, 2012, at the latest.  Henao agreed that he is seeking to hold Wyndham liable based only on his demotion, not his termination.  The court grants summary judgment in favor of Wyndham on Henao's retaliation claims asserted in Counts IV and VIII.

Summary judgment is denied with respect to the claims that Henao was demoted and suffered a hostile work environment based on his national origin and age, as asserted in Counts I,

III, V, and VII.   These are the only claims remaining for

adjudication.


          IT IS SO ORDERED.


          DATED: Honolulu, Hawaii, February 26, 2013.



                              /s/ Susan Oki Mollway
                              Susan Oki Mollway
                              Chief United States District Judge




Henao v. Wyndham Vacation Resorts, Inc., Civ. No. 10-00772 SOM/BMK; ORDER GRANTING IN
PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 87)

27